BOARD OF SUPR'S. OF DE SOTO COUNTY *v.* DEAN ET AL.

[82 South. 257. Division A. No. 20771.]

1. MANDAMUS. *Ministerial act. Issuance of bonds.*
   The issuance of road district bonds authorized under Laws 1916, chapter 173, and Laws 1918, chapter 214, by the board of supervisors is a ministerial and not a judicial act and mandamus is the proper remedy toenforce such issuance.

2. HIGHWAYS. *Creation of road districts. Power of supervisors. Statutes.*
   Chapter 173 of the Laws of 1916, does not confer on boards of Supervisors any power to create a road district, but chapter 214 of the Laws 1918, by necessary implication does confer the power upon such boards to create a road district and does not restrict them to any particular method in doing so.

3. HIGHWAYS. *Creation of road districts. Changing boundaries. Statutes.*
   Since Laws 1916, chapter 173, and Laws 1918, chapter 214, do not prescribe the procedure of the creation of road districts thereunder, boards of supervisors may pursue their own course in doing so, and hence the board has the right to change the boundaries of the district prior to calling an election for ascertaining the wish of the qualified electors relative to the issuance of bonds.

4. HIGHWAYS. *Road district. Issuance of bonds. Order eliminating land. Statute.*

An order eliminating land from a road district entered after the election for the issuance of bonds is void, for the reason that the bonds authorized, and which it is the duty of the board under the statute to issue are those of the district as consituted when the election was held.

5. COUNTIES. *Road districts. Bond election. Notice. Statute.*

The recital in the published notice of the election that it was to be participated in by registered voters who were landowners, was mere surplusage, and did not make the election held pursuant thereto void.

APPEAL from the circuit court of De Soto county. Hon. E. D. DINKINS, Judge.

Petition for mandamus by S. B. Dean and others against the board of supervisors of De Soto County. From a judgment granting the prayer of the petition, defendants appeal.

The facts are fully stated in the opinion of the court.

*Robt. B. Mayes,* for appellant.

I desire to comment on only a few things contended for in the brief of counsel for appellee. I make the statement that there is no statute in Mississippi now in existence, or that ever has been passed, giving the board of supervisors the power to create, or to initiate the creation, of any special road district; I have called the attention of the court to all the statutes on the subject in my original brief. The initiation of any road district must be a petition filed by twenty per cent of the qualified electors of any territory proposed to be included in a special road district. If this petition is not filed, no matter what else may have been done by the board, is is without jurisdiction. If they hold any election without this petition, the election is a nullity because the board was without power to order it. The petition in this case merely indicates that numerously

filed petition was presented. The minutes of the board do not show any jurisdictional facts. In the case of *Hinton* v. *Perry County,* 84 Miss. 536, this court has set forth the rule on this subject. It was said in matters in which the county board has limited jurisdiction, its minutes must show the jurisdictional facts, but its judgment need not set forth the evidence. See, also *Adams* v. *State Bank,* 67 So. 770. The case of *Wallace* v. *The State,* 61 So. 880. The case of *Wallace* v. *State,* 61 So. 162; is directly in point. In the last case the law required that when a territory was to be released from a special school district, it could be done only upon the petition of the majority of the resident freeholders. The court held that this petition was necessary to give the board jurisdiction to act. I might cite many other authorities, but it seems that this is sufficient to demonstrate that if the filing of the petition was necessary, the statute must be complied with, and the averment of the petition shows that it was not. When we depart from the statute and say things" will do,'' we leave our guide and our power.

Coming now to the next question. We differ from counsel and their conclusion. Let's analyze for a moment the Act of 1918, page 263. In the first place, when this district was attempted to be created, this act was not in existence. The only power then to create a special road district was a general law, and in order to create the district this general law must have been followed (Act of 1914). The only purpose of the Act of 1914 is to cure defects in the caption, and section one of the Acts of 1916. Let the court bear in mind that before this curative act was passed, the creation of a district and issuance of bonds could not be done simultaneously. At least, the legislature thought so when it passed the Act of 1918, and the court had some serious doubts about it. In order that a district might be created and bonds issued at the same time this curative act was passed,

but no formed law relative to how districts should be created was repealed or modified.

Reading further the act says that in cases where bonds have been issued by any road district, created under the Acts of 1916, they shall be valid "where all the preliminary conditions required by law have been complied with in all respects." Now counsel says that this clearly implies that the Act of 1918, "implies that the board of supervisors may initiate the matter thereafter." In other words, if the contention of the counsel is correct the Act of 1918, although not in conflict with any other statute, and not giving any power to the board of supervisors to initiate a special road district, repeals all other laws on this subject. It will be a vain search of the Acts of 1916 and 1918 to find in them any actual, or implied power given to the petition required by law. We think that no such interpretation as this can be given the act, because if the legislature had intended it they would not have required that all the preliminary conditions required by law be complied with, but they would have said all preliminary conditions required by chapter 173, Act of 1916 be complied with and since this act does not contain all the law on the subject on the creation of road districts but in order to find out what the law is, the preliminary conditions of which are required to be fulfilled we must go to other statutes. "All the preliminary conditions required by law" have not been fulfilled when only the Act of 1916 has been pursued. The construction given by the counsel would destroy every other act except this one. If the legislature had intended it, they would have said that the bonds should be good where all the preliminary conditions required by the Act of 1916 had been followed.

While section one of the Act of 1914 authorizes the board to create special road districts, it is qualified by section two giving such power only when the initiation is taken by twenty per cent of the qualified electors.

The power to create is left to the people as provided by section two. The Act of 1916 only intends to give the power to the board to initiate bonds to support a district after it is created as required by law.

*Burch & Minor,* for appellee.

The court has requested additional briefs on the two following propositions: First: "Does the statute under which the board of Supervisors proceeded in the matter here under discussion authorize the creation of a road district, or does it contemplate the issuance of bonds by a district already in existence?" Second: "Should the foregoing question be answered in the negative, can the district be held to have been created because of the compliance by the board of supervisors with the provisions of any other statute?"

We respectfully submit for the appellees that an affirmative answer should be given to each of the foregoing questions.

First Question.

Whatever doubt there may have been as to this was solved by the legislature of 1918 in the passage of chapter 214 of the Acts of 1918, which was an act to cure any defects in the Act of 1916 here in question and which provides: "That in all cases where any bonds have been issued or are proposed to be issued, by any road district created and operating under the provisions of chapter 173 of the Acts of the Mississippi legislature of 1916, where all the preliminary conditions required by law have been complied with in all respects, and where there may be a question of doubt in respect to the sufficiency of the caption of said act, and doubt as to the authority conferred upon boards of supervisors to create road districs, by section one of this act, said bonds shall be held and treated in all respects the same as if the title to said chapter 173 had been ample and

sufficient; and as if section 1 of said act had been clear and positive in conferring upon boards of supervisors authority to create road districts, as well as to issue the bonds of such districts as had been previously created." Acts of 1918, chapter 214.

This Act of 1918, therefore, we submit, sets the whole question at rest. Taking the whole of chapter 173 of the Acts of 1916, it is apparent that the legislature intended thereby, not merely to authorize the issuance of bonds by districts already created but also to authorize the creation of districts. If the act had the first purpose only (the issuance of bonds by districts already created) it was not needed as that was a matter already fully provided for by the act of 1914 (Ch. 176).

This same question was made as to chapter 176 of the Acts of 1914, the first section of which reads: "That the board of supervisors of any country in this state are hereby authorized and empowered to construct, or construct and maintain, or maintain one or more highways for the convenience of the traveling public, by contracts in one or more supervisors' districts of said county, or part of one supervisor's district, or two or more or parts of two or more supervisors' districts in such county, and for that purpose are authorized to issue and sell bonds and to levy and to collect taxes to pay such bonds and to maintain such roads so constructed in the manner herein provided."

It will be observed that this section merely authorizes the board of supervisors to construct and maintain highways and for that purpose, to issue and sell bonds and levy and collect taxes to pay same. It says nothing about the creation of road districts.

It was contended in *Prather* v. *Googe,* 108 Miss. 688, as a "second ground of attack" that the act did not authorize the creation of a road district less than supervisors district, whereupon this court said: "The second ground is without merit, because the first section of the

act clearly authorizes the organization of a road district less than one supervisor's district." *Prather* v. *Googe,* 108 Miss. 688.

The act now under consideration by the court here (ch. 173 of the Acts of 1916) clearly confers fully as much authority to organize a road district as did the first section of the Act of 1914 just above construed by the court.

To state the matter differently, the authority conferred upon the board of supervisors by the first section of the Act of 1914 (ch. 176) to construct and maintain highways, to issue bonds therefor and to collect taxes to pay same, was held by this court to embrace, as a necessary incident, the authority to create road districts. Exactly the same may be said of the Act of 1916 (ch 173) here under consideration. The case of *Prather* v. *Googe,* 108 Miss., was decided more than a year before the passage of the Act of 1916 and the legislature may well have understood that when, by the Act of 1916, they conferred upon the board of supervisors authority to construct and maintain roads in particular portions of a supervisors' district and to issue bonds therefor, that authority necessarily carried the power to organize and create the necessary districts.

It is our view that chapter 173 of the Acts of 1916 the legislature designed to provide for a simpler method of procedure for the creation of districts and the issuance of bonds. This view now has the confirmation of the legislature of 1918 as indicated by chapter 214 of the Acts of 1918.

### Second Question.

There is no ocassion to answer the second question unless the first question is answered in the negative and we believe a negative answer to the first question impossible. However, it may be said with respect to the second question that in any event the proceeding by the board of supervisors of DeSoto County now in review

in this case are valid under the Act of 1914, chapter 176. It will be noted that the procedure followed by the board of supervisors in the present case was in substantial obedience to the provisions of the last named act (Acts of 1914, ch. 176), the provisions of which are quite like those of the Act of 1916 (ch. 173) except that the latter act does not require any preliminary petition.

The only respect in which the Act of 1914 was not followed was that here the proceeding was initiated by "a numerously signed" petition, whereas that act required a petition signed by twenty per cent. of the qualified electors of the proposed district. The court will assume, we submit, that the petition was properly signed. However, that is not material in view of the fact that, without protest or appeal, the matter was submitted to the voters and the organization of the district approved by them.

Reply to Brief for Appellants.

The principal point raised in appellants' brief is that the proceedings of the board of supervisors in the instant case do not show that they were initiated by a petition signed, by twenty per cent. of the qualified electors of the territory in question and therefore, this organization cannot be justified as being under the Act of 1914. To this we reply: 1. The Act of 1916 (ch. 173) does not require any petition at all and clearly implies that the board of supervisors may initiate the matter themselves. Indeed, this is the only reason that can be given for the passage of the act. In enacting the Act of 1916 (ch. 173) the legislature must have had some purpose in mind and that act was wholly unnecessary, in view of the Act of 1914, if the same proceedings in the Act of 1914 were to be gone over again.

2. The proceedings in the instant case were in fact initiated by a "numerously signed petition" presented to the board of supervisors. In view of the maxim

*"omnia rite acta praesumuntur"* this court may well assume. if such a petition ought to have been signed by twenty per cent. of the electors, that it was so signed particularly in view of the election thereafter held. As an additional reason for this presumption, we may assume that, the signatures of twenty per cent. of the electors was necessary and the petition did not contain them, the parties opposing this district would at once have appealed from the action of the board of supervisors to the circuit court or made some protest to the board on that ground.

3. Even if a petition signed by twenty per cent. of the electors were necessary and even if it is assumed that the original petition contained less than that number, is that of any weight here where, without objection from any source the organization of the district proceeded to election by the people and was approved by the majority of the qualified electors. This court has never inclined to hypercriticism in matters relating to the public interest like this and after all, the main thing is the consent of the people affected. In the present instance, the board of supervisors acted on a numerously signed petition and submitted the matter on the vote of the people without any objection ever being made to the character of the petition. The people in the territory voted in favor of the creation of the district and the issuance of the bonds and thereby made immaterial the number of signatures attached to the original petition.

It is argued by appellants that the curative Act of 1918 (ch. 214) is not of value except in cases "where all the preliminary conditions required by law have been complied with." The "preliminary conditions" there referred to clearly mean the preliminary conditions required by the Act of 1916. There is nothing to warrant or suggest the view that the legislature was referring to preliminary conditions required by some other act. For the Act of 1918 clearly undertook to declare that

chapter 173 of the Acts of 1916, was a complete act within itself and that it authorized the creation of road districts and everything else necessary to give that effect.

Smith, C. J., delivered the opinion of the court.

This is an appeal from the judgment of the court below granting the prayer of a petition for a writ of mandamus to compel the board of supervisors of De-Soto county to issue the bonds of a road district created and the issuance of the bonds thereof alleged to have been authorized under the provisions of chapter 173 of the Laws of 1916 and chapter 214 of the Laws of 1918. The petition alleges, in substance, that the board of supervisors, pursuant to a numerously signed petition praying therefor, entered an order creating a road district within a supervisor's district defining the boundaries thereof, and published notice that it would proceed to issue the bonds of the district under the provisions of chapter 173 of the Laws of 1916, and upon the filing of a protest against the issuance thereof by the required number of qualified electors of the proposed district an election to determine whether or not the bonds should be issued was called. The order by which the election was called also eliminated four sections of land from the proposed district, and provided:

"That, in the event of the election resulting in the creation of the proposed district, and in the issuance of the bonds of same, the board still reserves the right to hear complaints of landowners of the proposed district that they recieve no benefit from the proposed road improvement."

The questions ordered to be submitted at the election were:

"Do you favor the creation of Yazoo Delta Continuous Highway taxing district, and issuing bonds of

same in a sum not to exceed seventy-five thousand dollars?''

''Do you oppose the creation of Yazoo Delta Continuous Highway taxing district, and issuing bonds of same in a sum not to exceed seventy-five thousand dollars?''

The election was held by the election commissioners, who reported the result thereof to the board of supervisors, which entered an order upon its minutes reciting that a majority of the qualified electors had voted for the creation of the district and for the issuance of the bonds. This order further recited that: ''It now appearing to the board that a bond issue at the present time would not be to the interest of the property holders of said district, it is ordered by the board that the issuance of said bonds be deferred to a more convenient season. But, before any order directing the issuance of bonds is made, notice will be given the property owners of said district that at a designated meeting of the board all requests by any of said property owners to have their land released from said district will be heard and disposed of. And until the giving of said notice all other matters and things are reserved.''

Another order was afterwards entered eliminating certain land from the district. The notice of the election published by the commissioners of election was addressed to the qualified electors, but recited in the body thereof, in substance, that the election was to be participated in' by the registered voters of the proposed district who owned land situated therein.

A demurrer interposed to this petition was overruled, and the board was ordered to proceed in accordance with the provisions of chapter 173 of the laws of 1916 with the issuance of the bonds of the district as defined by its order calling the election.

The reasons assigned by counsel for the appellant for reversal of the judgment in the court below are: First, the issuance of the bonds here in question cannot be

enforced by means of a writ of mandamus, the ap-
pellees' remedy being an appeal to the court below from
the order of the board of supervisors declining to issue
the bonds; second, chapter 173 of the Laws of 1916 con-
fers no power on boards of supervisors to create a road
district, but simply confers upon them power to issue
bonds of a district already in existence; third, the board
of supervisors was without power to eliminate any land
from the district as defined in its original order creating
the district, and its attempts so to do render this whole
proceeding void; fourth, the election held to ascertain
the will of the qualified electors of the district with re-
ference of the issuance of the bonds is void for the reason
that the right to participate therein was limited by the
published notice thereof to registered voters owing land
situated within the district.

The relief here sought is the enforcement of the
performance by the appellant of a ministerial, and not
of a judicial act; consequently a writ of mandamus is
the proper remedy. *Board of Supervisors* v. *Pidgeon
Thomas Iron Co.*, 114 Miss. 274, 75 So. 117.

Chapter 173 of the Laws of 1916 does not confer on
boards of supervisors any power to create a road dis-
trict, but chapter 214 of the Laws of 1918 by necessary
implication does confer the power upon such boards to
create a road district of the character here in question,
and does not restrict them to any particular method in
doing so.

Since the statutes here in question do not prescribe
the procedure of the creation of road districts there-
under, boards of supervisors may pursue their own
course in doing so; consequently the appellant had the
right to change the boundaries of the district here in
question prior to the calling of the election for ascertain-
ing the wish of the qualified electors relative to the
issuance of the bonds. The order eliminating land from

the district entered after the election was held is void for the reason that the bonds authorized and which it is the duty of the board under the statute to issue are those of the district as constituted when the election was held, and this we understand was the holding of the court below.

The recital in the published notice of the election that it was to be participated in by registered voters who were landowners was mere surplusage, and did not make the election held pursuant thereto void. By the notice publicity was given to the election, and under the statute all qualified electors could participate therein, and it does not appear that any such were denied the right to do so, conceding for the purpose of the argument that that question could be here raised.

*Affirmed.*